IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ST. CLAIR COUNTY, ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:21-cv-251 |
| | ) | |
| v. | ) | |
| | ) | |
| MCKINSEY & COMPANY, INC. and | ) | |
| NAHEED T. BASHIR, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

**MCKINSEY'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

STROOCK & STROOCK & LAVAN LLP
Stephen J. Newman
2029 Century Park East, 18th Floor
Los Angeles, CA 90067
Phone: (310) 556-5800
snewman@stroock.com

*Attorneys for McKinsey & Company, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page(s)**

Table of Authorities ........................................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

THE COMPLAINT'S ALLEGATIONS AND FACTS RELEVANT TO THE MOTION .......... 4

   I.    Procedural History and Motion to Transfer ................................................... 4

   II.   Facts Relating to Court's Bankruptcy Jurisdiction ....................................... 5

   III.  Facts Relating to Court's Diversity Jurisdiction ........................................... 5

ARGUMENT ....................................................................................................................... 6

   I.    This Court Has "Related-To" Bankruptcy Jurisdiction Over This Action ..................... 6

        A.  This Action Has a Conceivable Effect on the Purdue Bankruptcy Estate ............... 7

        B.  McKinsey Properly Removed This Action Under Section 1452(a) ..................... 13

            i.   Plaintiff's Claims Are Not an Authorized Exercise of any Police or Regulatory Power ......................................................................................... 13

            ii.  The Police or Regulatory Power Exception Does Not Apply to Claims Seeking Liquidation of Significant Monetary Damages ............................... 14

        C.  Nor Should This Court Abstain From Exercising Its "Related-To" Bankruptcy Jurisdiction Over This Action ............................................................. 15

            i.   Plaintiff Fails to Establish That Mandatory Abstention Is Required. .......... 16

            ii.  Neither Permissive Abstention Nor Equitable Remand Are Warranted ...... 18

   II.   This Court Also Has Diversity Jurisdiction Over This Action ..................................... 19

        A.  Physician Defendant is Fraudulently Joined and Should Be Severed ................... 20

            i.   Plaintiff's Malpractice Claims Fail Because Plaintiff Fails to Comply With the Mandatory Requirements of the Illinois Medical Malpractice Statute. . 20

            ii.  Plaintiff's Claims Also Fail Because They are Time-Barred. ..................... 22

        B.  The Physician Defendant is a Dispensable Party Whose Actions are Unrelated To McKinsey and Should be Severed under Rule 21 ............................................. 24

        C.  Fraudulent Misjoinder Allows this Court to Sever Physician Defendant to Protect McKinsey's Right to Removal ........................................................................... 28

        D.  There is a Genuine Dispute as to Physician Defendant's Citizenship ................... 29

   III.  This Court Should Hold Plaintiff's Motion in Abeyance Until the JPML Court Decides McKinsey's Section 1407 Transfer Motion ........................................................... 30

CONCLUSION ................................................................................................................... 34

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*188 LLC v. Trinity Indus. Inc.*,
    300 F.3d 730 (7th Cir. 2002) ................................................................30

*A. H. Robins Co. v. Piccinin*,
    788 F.2d 994 (4th Cir. 1986) ...................................................................9

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
    No. 03 MDL 1529LMM, 2005 WL 1404796 (S.D.N.Y. June 14, 2005) ...............................17

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
    No. 03 MDL 1529, 2005 WL 1404798 (S.D.N.Y. June 14, 2005)..........................................8

*Alexander v. Abbott Labs., Inc. (In re Depakote)*,
    No. 12-CV-52-NJR-SCW, 2016 U.S. Dist. LEXIS 154451 (S.D. Ill. Nov. 4,
    2016) ....................................................................25

*Board of Trustees of Teachers' Retirement System of State of Illinois v.
WorldCom, Inc.*,
    244 F. Supp. 2d 900 (N.D. Ill. 2002) ......................................31, 32, 33

*Bommersbach v. Ruiz*,
    461 F. Supp. 2d 743 (S.D. Ill. 2006)....................................................22

*Bush v. United States*,
    939 F.3d 839 (7th Cir. 2019) ...................................................................7

*California Pub. Employees' Ret. Sys. v. Wachovia Cap. Markets, LLC*,
    No. CV083491GPSPLAX, 2008 WL 11381419 (C.D. Cal. Oct. 5, 2008) ...........................12

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)................................................................20

*In re Cary Metal Prods., Inc.*,
    152 B.R. 927 (Bankr. N.D. Ill. 1993) ......................................................8

*Matter of Cash Currency Exch., Inc.*,
    762 F.2d 542 (7th Cir. 1985) ...............................................................15

*Chao v. Hosp. Staffing Servs., Inc.*,
    270 F.3d 374 (6th Cir. 2001) .................................................................15

*Chapman v. Chandra*,
Case No. 0 6-cv-0651-MJR, 2007 U.S. Dist. LEXIS 40739 (S.D. Ill. June 5, 2007) ...................................................................................................................21

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*,
294 F.3d 849 (7th Cir. 2002) ...................................................................................33

*City of Huntington v. AmerisourceBergen Drug Corp.*,
No. CV 3:17-01362, 2017 WL 3317300 (S.D. W. Va. Aug. 3, 2017) ..............................22, 30

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ...............................................................................................19

*Connecticut Resources Recovery Auth. v. Lay*,
292 B.R. 464 (D. Conn.2003) .................................................................................19

*Cooke-Bates v. Bayer Corp.*,
No. 3:10-CV-261, 2010 U.S. Dist. LEXIS 107996 (E.D. Va. Oct. 8, 2010)..........................27

*Cty. Comm'n of McDowell Cty. v. McKesson Corp.*,
263 F. Supp. 3d 639 (S.D. W. Va. 2017) ...............................................................29

*Cunningham v. Huffman*,
154 Ill. 2d 398, 609 N.E.2d 321 (1993) ................................................................23

*In re DeMert & Dougherty, Inc.*,
No. 01CV7289, 2001 WL 1539063 (N.D. Ill. Nov. 30, 2001) ..............................16

*In re Dow Corning Corp.*,
86 F.3d 482 (6th Cir. 1996) ...............................................................................9, 10

*Englum v. City of Charleston*,
2017 IL App (4th) 160747, 80 N.E.3d 61 ..............................................................14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
314 B.R. 354 (S.D. Tex. 2004) .................................................................................8

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
No. CIV.A. G-02-0299, 2002 WL 32107216 (S.D. Tex. Aug. 12, 2002) ..............................19

*Matter of FedPak Sys, Inc.*,
80 F.3d 207 (7th Cir. 1996) ...................................................................................7

*Fid. & Deposit Co. of Maryland v. TRG Venture Two, LLC*,
No. 19 C 389, 2019 WL 5208853 (N.D. Ill. Oct. 16, 2019) ..................................19

*Florian v. Sequa Corp.*,
No. 98 C 7459, 2002 U.S. Dist. LEXIS 24149 (N.D. Ill. Dec. 16, 2002) ..............................25

*Galva Foundry Co. v. Heiden*,
924 F.2d 729 (7th Cir. 1991) ........................................................................29, 30

*In re Gardner*,
913 F.2d 1515 (10th Cir. 1990) .............................................................................33

*Gen. Elec. Co. v. Byrne*,
611 F.2d 670 (7th Cir. 1979) .................................................................................31

*In re Georgou*,
157 B.R. 847 (N.D. Ill. 1993) ...............................................................................17

*Greene v. Wyeth*,
344 F. Supp. 2d 674 (D. Nev. 2004).....................................................................28

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
No. CIV 07-1487 DWF/AJB, 2007 WL 2572048 (D. Minn. Aug. 30, 2007) ........29

*Hill v. C.R. Bard, Inc.*,
582 F. Supp. 2d 1041 (C.D. Ill. 2008) ..................................................................22

*Hughes v. Sears, Roebuck & Co.*,
Civil Action No. 2:09-CV-93, 2009 U.S. Dist. LEXIS 82550 (N.D.W. Va.
Sep. 3, 2009) ........................................................................................................27

*Janazzo, Sr. v. Fleetboston Fin. Corp.*,
No. 01 C 6939, 2002 WL 54541 (N.D. Ill. Jan. 15, 2002) ...................................17

*Jass v. Prudential Health Care Plan*,
88 F.3d 1482 (7th Cir. 1996) .................................................................................24

*Joseph v. Baxter International, Inc.*,
614 F. Supp. 2d 868 (N.D. Ohio 2009).............................................................27, 28

*Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*,
376 Ill. App. 3d 1006 (2007) .................................................................................23

*Maria Alencastro, Claimant, v. the State of Illinois, Respondent.*,
54 Ill. Ct. Cl. 457 (2001).......................................................................................14

*McDonald v. Obaisi*,
No. 16 C 5417, 2018 U.S. Dist. LEXIS 34897 (N.D. Ill. Mar. 2, 2018) ...............22

*Meritage Homes Corp. v. JPMorgan Chase Bank, N.A.*,
474 B.R. 526 (Bankr. S.D. Ohio 2012)..................................................................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
522 F. Supp. 2d 569 (S.D.N.Y. 2007)....................................................................13

*Meyers v. Bayer AG*,
    143 F. Supp. 2d 1044 (E.D. Wisc. 2001) .............................................................31

*Midwest Transit, Inc. v. Hicks*,
    79 F. App'x 205 (7th Cir. 2003) ...................................................................29, 30

*In re Mission Bay Ski & Bike, Inc.*,
    398 B.R. 250 (Bankr. N.D. Ill. 2008) ...............................................................8

*In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*,
    323 F. Supp. 2d 861 (S.D. Ohio 2004) .............................................................18

*Pace v. Timmermann's Ranch & Saddle Shop, Inc.*,
    795 F.3d 748 (7th Cir. 2015) ...........................................................................25

*Palucki v. Sears, Roebuck & Co.*,
    879 F.2d 1568 (7th Cir. 1989) .........................................................................30

*Prime Dev., Inc. v. First Clover Leaf Bank*,
    No. 10-445-DRH, 2010 WL 4919608 (S.D. Ill. Nov. 29, 2010) .........................1, 16

*In re Purdue Pharm. L.P.*,
    619 B.R. 38, 42 (S.D.N.Y. 2020) .............................................................. *passim*

*Queenwood E. Sheltered Care Home, Ltd. v. Vill. of Morton*,
    94 Ill. App. 3d 51 (1981) . Thus, this Action ...................................................14

*Salsman v. United States*,
    No. 03-CV-0140-MJR, 2005 U.S. Dist. LEXIS 18072 (S.D. Ill. Aug. 19,
    2005) ...............................................................................................................21

*Sapperstein v. Hager*,
    188 F.3d 852 (7th Cir. 1999) ...........................................................................31

*Schwartz v. State Farm Mut. Auto. Ins. Co.*,
    174 F.3d 875 (7th Cir. 1999) ...........................................................................20

*Sullivan v. Calvert Mem'l Hosp.*,
    117 F. Supp. 3d 702 (D. Md. 2015) ................................................................28

*Sutton v. Davol, Inc.*,
    251 F.R.D. 500 (E.D. Cal. 2008) ...............................................................27, 28

*Temple v. Synthes Corp.*,
    498 U.S. 5 (1990) .............................................................................................25

*In re Thelen LLP*,
    No. 09-15631 (MEW), 2015 WL 4999972 (Bankr. S.D.N.Y. Aug. 21, 2015) ......12

*Things Remembered, Inc. v. Petrarca*,
    516 U.S. 124 (1995).................................................................................................13

*Todd v. Merrell Dow Pharm., Inc.*,
    942 F.2d 1173 (7th Cir. 1991) ...............................................................................25

*Vill. of Rockton, Illinois v. Sonoco Prod. Co.*,
    135 F. Supp. 3d 700 (N.D. Ill. 2015) .....................................................................14

*In re W.R. Grace & Co.*,
    386 B.R. 17 (Bankr. D. Del. 2008) .................................................................13, 15

*Wagner v. Merck & Co., Inc.*,
    No. 05-CV-00364-DRH, 2005 WL 8173707 (S.D. Ill. June 21, 2005)...................34

*In re Westlake Property Holdings, LLC*,
    606 B.R. 772 (Bankr. N.D. Ill. 2019) ....................................................................13

*Whittingham v. CLC of Laurel, LLC*,
    No. 2:06cvl 1-KS-MTP, 2006 WL 2423 (S.D. Miss. Aug. 22, 2006) ....................16

*In re WorldCom Sec. Lit.*,
    293 B.R. 308 (S.D.N.Y. 2003)..........................................................................17, 18

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
    779 F. Supp. 2d 846 (S.D. Ill. 2011)......................................................................29

**Statutes**

735 ILCS 5/2-622 .....................................................................................................22

735 ILCS 5/2-622(a) .................................................................................................21

735 ILCS 5/13-205 ...................................................................................................23

735 ILCS 5/13-212(a) ...............................................................................................22

28 U.S.C. § 157(b)(5) ...............................................................................................16

28 U.S.C. 1332 ........................................................................................................3, 4

28 U.S.C. 1334 ................................................................................................. *passim*

28 U.S.C. § 1407...........................................................................................3, 4, 30, 31

28 U.S.C. § 1452 .............................................................................................. *passim*

**Other Authorities**

*Chronic Pain — United States, 2016,* CENTER FOR DISEASE CONTROL (March 18, 2016),
   https://www.cdc.gov/mmwr/volumes/65/rr/rr6501e1.htm#suggestedcitation.........................27

Ill. Const. art. VII, § 7................................................................................................14

Federal Rule of Civil Procedure 19 ....................................................................24, 25

Federal Rule of Civil Procedure 20 ....................................................................24, 25

Federal Rule of Civil Procedure 21 ....................................................................... *passim*

Defendant McKinsey & Company, Inc. ("McKinsey") respectfully submits this memorandum of law in Opposition to St. Clair County, Illinois' ("Plaintiff") Motion to Remand ("Motion," ECF Doc. # 20).[1]

## PRELIMINARY STATEMENT

This case relates to one of many cases recently filed against McKinsey arising out of its consulting work for now-bankrupt Purdue Pharma L.P. ("Purdue"), the manufacturer of OxyContin, and Purdue's role in the national opioid epidemic. Despite Plaintiff's effort to characterize McKinsey's removal of this Action as "an effort to avoid state court proceedings," Motion at 11, it is Plaintiff that has gone to great lengths to avoid having these claims heard in a fair and efficient federal forum in the Southern District of New York where Plaintiff has already submitted to jurisdiction to have its similar claims against Purdue resolved in bankruptcy proceedings and where McKinsey has asked the Judicial Panel on Multidistrict Litigation ("JPML") to transfer this Action (and the others just like it). Plaintiff's apparent belief that it will obtain a more favorable result in its home state court is not a valid reason to ignore this Court's (or other federal courts') subject matter jurisdiction and interfere with the coordinated resolution of opioid-related cases against McKinsey.

If this Court proceeds to rule, it is clear that subject matter jurisdiction is proper for two independent reasons. ***First***, the Court has bankruptcy jurisdiction under 28 U.S.C. § 1334(b). Even though Plaintiff's complaint mentions Purdue more times than it does McKinsey, and even though Plaintiff does not dispute the breadth of the "conceivable effects" test, Plaintiff nevertheless contends that the claims here are not "related to" Purdue's bankruptcy case.

---

[1] In submitting this opposition, McKinsey does not waive, and expressly preserves all defenses, including but not limited to lack of personal jurisdiction.

Plaintiff is wrong. The allegations in this Action against McKinsey are highly interconnected with the alleged conduct and actions of Purdue as Plaintiff's complaint seeks to hold both Purdue and McKinsey jointly and severally liable for allegedly unlawful opioid sales and marketing. And, given that Plaintiff has filed a proof of claim against Purdue, which also asserts the same theories and types of alleged damages that it now asserts here against McKinsey, the resolution of Plaintiff's claims against McKinsey may conceivably affect Purdue's rights and liabilities in several ways sufficient to confer "related-to" bankruptcy jurisdiction including by: (i) reducing the amount available for Plaintiff to recover from Purdue, (ii) collaterally estopping Purdue from relitigating factual findings in this Action, (iii) burdening Purdue with the costs of discovery and related matters, and (iv) subjecting Purdue to setoff, indemnification, or contribution claims by McKinsey.

Plaintiff argues that the "police or regulatory power" exception in 28 U.S.C. § 1452(a) precludes McKinsey from removing this Action even if the Court otherwise has "related-to" jurisdiction over it. Plaintiff's argument is without merit because it has not established any police power or regulatory authority to assert the claims here, and because the claims seek significant monetary damages, bringing them outside the scope and purpose of this exception.

Similarly, Plaintiff says that the Court should abstain from exercising its bankruptcy jurisdiction. But Plaintiff has not met its burden to establish that abstention is either applicable or warranted here. By Plaintiff's own account in repeatedly characterizing its claims as personal injury claims, the Court is statutorily required to keep such claims in the federal district courts. Regardless, even if abstention were available, it is not mandatory where, as here, there is an independent basis for federal jurisdiction (i.e. diversity, discussed below) and where Plaintiff fails to establish that this Action can be "timely adjudicated" in state court – a

fact-intensive analysis on which Plaintiff has the burden of proof. Finally, Plaintiff's permissive abstention and equitable remand arguments fare no better because Plaintiff does not explain how sending this particular case to state court is consistent with the efficient resolution of all related cases that can and likely will be coordinated pursuant to 28 U.S.C. § 1407.

***Second***, and independent of whether "related-to" bankruptcy jurisdiction exists, federal diversity jurisdiction also is proper under 28 U.S.C. § 1332. Plaintiff's inclusion of materially distinct claims against an allegedly non-diverse defendant fails to defeat diversity jurisdiction for four reasons. First, the Physician Defendant is fraudulently joined, as the claims against her are time-barred and Plaintiff never complied with substantive requirements of Illinois medical malpractice law, which mandate dismissal of the claims against the Physician Defendant with prejudice. Second, severance via Federal Rule of Civil Procedure 21 is warranted, as the claims against the Physician Defendant and McKinsey do not arise from the same series of transactions or occurrences. Third, the doctrine of fraudulent misjoinder counsels this court to ignore the Physician Defendant's citizenship to protect McKinsey's right to removal. Fourth, in response to the Notice of Removal, Plaintiff has not proffered sufficient evidence in support of its allegation that Physician Defendant is a citizen of Illinois. At a minimum, McKinsey is entitled to an evidentiary hearing in the event the Court determines it necessary to evaluate diversity as a basis for jurisdiction, given the factual and legal complexities presented.

Finally, since the Court last considered McKinsey's Motion to Stay Proceedings, the JPML scheduled a hearing on the transfer motion next month, and another district court stayed a nearly identical remand motion pending the JPML ruling. Thus, here too it would be appropriate for this Court to defer a decision on the present Motion to allow the ultimate transferee court to rule on it for the sake of judicial economy and consistency across multiple cases.

In sum, this Action was properly removed on the basis of both "related-to" bankruptcy and diversity jurisdiction, and thus Plaintiff's Motion should be stayed or denied in all respects.

**THE COMPLAINT'S ALLEGATIONS AND FACTS RELEVANT TO THE MOTION**

**I.      Procedural History and Motion to Transfer**

On January 29, 2021, Plaintiff filed a Complaint in the Circuit Court of the Twentieth Judicial Circuit in St. Clair County, Illinois (the "Action") against McKinsey and Naheed T. Bashir, M.D. (the "Physician Defendant"). *See* Declaration of James L. Bernard In Support of McKinsey's Opposition to Plaintiff's Motion to Remand ("Bernard Decl."), Ex. 1. McKinsey was served with the Complaint on March 4, 2021. *See id.* ¶ 3. On March 4, 2021 McKinsey timely removed the Action under 28 U.S.C. §§ 1332, 1334, and 1452. *See* ECF Doc. # 1.

Plaintiff alleges that McKinsey was engaged as a consultant to advise Purdue how to increase the sales of Purdue's opioid products by researching, designing, and implementing marketing and promoting strategies. *See generally* Complaint ¶¶ 1–19. Despite McKinsey's unique role as an outside consultant, which, unlike Purdue (and other similarly situated defendants in other opioid litigation), never manufactured, distributed, sold, or prescribed any opioids, Plaintiff nevertheless asserts claims against McKinsey for negligence, negligent misrepresentation, public nuisance, fraud and deceit, civil conspiracy/joint and several liability, civil aiding and abetting, and unjust enrichment. *Id.* ¶¶ 197–240.

The Action is one of at least 28 filed against McKinsey in at least 16 different federal judicial districts, containing virtually identical allegations relating to consulting work McKinsey performed for Purdue. *See* Bernard Decl. ¶ 4. On March 5, 2021, McKinsey filed before the JPML a Motion to Transfer For Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 ("McKinsey's 1407 Motion") this Action and other related actions. *See id*. ¶ 8. McKinsey's

1407 Motion is currently docketed in the JPML as MDL No. 2996, briefing is complete, and it is

scheduled to be argued on May 27, 2021 (with a ruling to follow within a few days). *See id.* ¶ 9.

## II.    Facts Relating to Court's Bankruptcy Jurisdiction

Plaintiff's allegations against McKinsey are based on consulting work McKinsey

performed for Purdue. *See generally id.*, Ex. 1. Accordingly, although Purdue is not named as a

defendant here because it filed for bankruptcy protection on September 15, 2019,[2] McKinsey's

alleged liability to Plaintiff depends upon Plaintiff's ability to establish Purdue's culpability with

respect to the manufacture and sale of OxyContin and that such culpability is related, at least in

part, to advice or recommendations McKinsey provided that were adopted by Purdue regarding

OxyContin sales. Although the automatic bankruptcy stay precluded Plaintiff from expressly

naming Purdue as a co-defendant in this Action, Plaintiff's Complaint extensively tries to link

Purdue's conduct to McKinsey's work for Purdue.

On July 30, 2020, Plaintiff filed a proof of claim in the Purdue Bankruptcy Case seeking

in excess of $2,071,539,661.00 from Purdue's bankruptcy estates for opioid-related damages

caused by Purdue's fraudulent and negligent conduct in the marketing, promotion, sale, and/or

distribution of prescription opioid products. *See, e.g., id.*, Ex. 2, Addendum at 16-17. On March

15, 2021, Purdue filed a proposed Joint Chapter 11 Plan ("Proposed Plan") of Reorganization of

Purdue Pharma L.P. and its Affiliated Debtors. *See id.*, Ex. 3. A confirmation hearing to

consider the Proposed Plan is currently scheduled for August 9, 2021.

## III.    Facts Relating to Court's Diversity Jurisdiction

St. Clair County is organized under the laws of the state of Illinois and is therefore a

citizen of Illinois. McKinsey, a management consulting firm, is a New York corporation with its

---

[2] *In re Purdue Pharma L.P.* Case No. 19-23649 (Bankr. S.D.N.Y.) ("Purdue Bankruptcy Case").

principal place of business in New York, New York and is therefore a citizen of New York. Plaintiff does not dispute these facts nor that more than $75,000 is in controversy in the case.

The only challenge to diversity jurisdiction is based upon Plaintiff's allegation that the Physician Defendant is a citizen of Illinois, rather than Missouri (as stated in the Notice of Removal). However, Plaintiff presents insufficient evidence in support of its position. The Physician Defendant is a pain management specialist alleged to have over-prescribed opioids. She maintained a practice in Missouri, and in January 2021, the Missouri medical regulatory board sanctioned the Physician Defendant for over prescribing a controlled substance, though details of what substance and to whom it was over-prescribed were not provided. *See id.*, Ex. 7. Although the Physician Defendant prescribed opioids, prior to this lawsuit, she had never heard of McKinsey. She had never been employed by, nor contacted by, a McKinsey employee, in Illinois or anywhere else. And no Purdue sales representative ever contacted her in Illinois or anywhere else. Plaintiff presents no evidence of any contact between the Physician Defendant and McKinsey in Illinois or anywhere else. Moreover, Plaintiff presents no evidence that the Physician Defendant is domiciled in Illinois, only that service was effected in Illinois.

**ARGUMENT**

**I.    This Court Has "Related-To" Bankruptcy Jurisdiction Over This Action**

This Court has jurisdiction over this Action under section 1334(b) because it is "related to" Purdue's Bankruptcy Case. Plaintiff ignores the many "conceivable effects" that this Action, which attempts to link McKinsey to Purdue's conduct, may have on the Purdue bankruptcy estates, where Plaintiff filed a proof of claim alleging similar conduct as here. Plaintiff says that even if such jurisdiction exists, removal was improper because Plaintiff asserts a "police power." But it identifies no such authority and in any event is seeking to recover substantial money damages, not assert a police power. Finally, Plaintiff fails to meet its burden to prove that this

Court should abstain from exercising its bankruptcy jurisdiction. Abstention is not only inapplicable, but it would be contrary to the efficiency goals of coordinated MDL litigation.

## A.    This Action Has a Conceivable Effect on the Purdue Bankruptcy Estates

Plaintiff concedes that jurisdiction over this Action exists if its "outcome might have any conceivable effect on the bankrupt estate." Motion at 15 ("McKinsey correctly identifies the test for related-to jurisdiction.") (collecting cases).[3] Accordingly, "[related-to jurisdiction] is satisfied when the resolution has a potential effect on other creditors." *Bush v. United States*, 939 F.3d 839, 846 (7th Cir. 2019); *see also Matter of FedPak Sys, Inc.*, 80 F.3d 207, 213 (7th Cir. 1996) (holding that "related-to" jurisdiction arises "when the dispute affects the amount of property for distribution [*i.e.* the debtor's estate] or the allocation of property among creditors"). In seeking remand, however, Plaintiff conveniently ignores the many "conceivable effects" this Action may have upon Purdue's bankruptcy estates.

Throughout its Motion, Plaintiff avoids mentioning the proof of claim it filed in Purdue's Bankruptcy Case, totaling approximately $2 billion, for Purdue's allegedly fraudulent, negligent, and unlawful conduct in the marketing and sale of prescription opioid products. *See* Bernard Decl., Ex. 2 at 16. Similarly, in this Action, Plaintiff seeks to recover damages from McKinsey for essentially the same acts upon which its proof of claim against Purdue is based. Indeed, both Plaintiff's Complaint and proof of claim seek damages for "costs" relating to medical care, treatment, counseling and rehabilitation services, treatment of infants, care for children, law enforcement and public safety, and drug court and other resources expended through the judicial system, allegedly incurred in connection with Purdue's opioids products. *Compare* Bernard

---

[3] For this reason, Plaintiff is simply wrong that the "'conceivable effect' [sic] test requires ***certainty*** . . ." Motion at 15 (emphasis in original).

Decl., Ex. 2 at 18–20 *with* Bernard Decl., Ex. 1, Prayer for Relief, ¶ 1.  Plaintiff's success in this Action may affect Purdue's liabilities and Plaintiff's status in relation to other creditors in Purdue's Bankruptcy Case because to the extent Plaintiff alleges joint and several liability, any recovery that Plaintiff may obtain from McKinsey may reduce the amount owed by the Purdue estates to Plaintiff, for the simple reason that Plaintiff cannot recover twice for the same harms.

"Related-to" jurisdiction exists over a non-debtor's action for damages against another non-debtor, where, as here, "the non-debtor plaintiff is a creditor in the bankruptcy case and recovery in the action will reduce its claim against the bankruptcy estate."  *In re Mission Bay Ski & Bike, Inc.*, 398 B.R. 250, 253-54 (Bankr. N.D. Ill. 2008) (finding that suit against non-debtor guarantor "related to" debtor's bankruptcy proceeding because success against guarantor would reduce amount recoverable in bankruptcy).[4]  *Grant v. Arthur Andersen, LLP (In re Baptist Found. Of Arizona)*, is also instructive.  No. CIV 00-557-PHX-ROS, 2000 WL 35575676, at *1 (D. Ariz. 2000).  There, plaintiffs sued the Baptist Foundation of Arizona ("BFA") and related entities in Arizona state court for securities fraud.  The case was dismissed with respect to BFA because of its bankruptcy filing, and plaintiffs subsequently added as a defendant Arthur Anderson, an accounting firm that served as BFA's auditor, alleging that the auditor submitted

---

[4] The weight of authority supports this view.  *See In re Cary Metal Prods., Inc.*, 152 B.R. 927 (Bankr. N.D. Ill. 1993) ("The filing of an actual proof of claim (based upon potential damages arising from the third-party action) . . . permits a bankruptcy court to contingently value that claim's impact upon the estate.  Assuming an impact, a bankruptcy court would have jurisdiction to entertain the third-party action as a related proceeding."); *see also, e.g., In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2005 WL 1404798, at *2 (S.D.N.Y. June 14, 2005) (holding that action had "conceivable effect" on bankrupt estate because, "[t]o the extent that plaintiffs are successful against the defendants, plaintiffs' recoveries will in all probability (and certainly conceivably) reduce the total of Adelphia's liabilities"); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 314 B.R. 354, 357 (S.D. Tex. 2004) (sustaining related-to jurisdiction where plaintiffs filed proofs of claim in bankruptcy proceedings arising out of same causes of action asserted in the state court proceedings, which could affect the estate).

false and misleading financial statements. *See id.* Arthur Andersen removed the action to federal court on the ground that the lawsuit was "related to" BFA's bankruptcy proceeding because plaintiffs were BFA's creditor. *See id.* at *2–3. The court agreed, finding that "related-to" jurisdiction existed over the action because plaintiffs' status as creditors meant that:

> A judgment against Arthur Andersen . . . would satisfy at least a portion of the [p]laintiffs' claims against BFA in the bankruptcy proceedings, because, whether acting as Plaintiffs in the action at bar or as creditors in the bankruptcy proceeding, the Plaintiffs are seeking recovery of their lost investments. If Plaintiffs recover all or part of their lost investments in the action at bar, their claims against the bankruptcy estate would be wholly or partially satisfied, thereby affecting their status in relation to other creditors. . . . If Plaintiffs in the action at bar obtain relief from Arthur Andersen, at least a portion of the debt BFA owes them will be extinguished.

*Id.* at *3–4. Here, too, any recovery that Plaintiff may obtain from McKinsey in this Action could impact the recovery on Plaintiff's existing claim in Purdue's Bankruptcy Case, thereby affecting the administration of Purdue's bankruptcy estates.

Plaintiff's argument that a finding of bankruptcy jurisdiction over this Action would have the "curious effect" of extending jurisdiction to all mass tort claims against a third-party alleged to have engaged in joint conduct with a bankruptcy debtor ignores substantial authority finding jurisdiction exists under precisely those circumstances. *See* Motion at 14. Since the Fourth Circuit's decision in *A. H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) and the Sixth Circuit's decision in *Dow Corning 1*, 86 F.3d 482 (6th Cir. 1996), courts have regularly exercised bankruptcy jurisdiction over mass tort claims against non-debtors due to the intertwined nature of those claims with the conduct of the debtor in bankruptcy. *See, e.g.*, *In re Dow Corning Corp.*, 86 F.3d at 492 ("When [a] plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." (internal quotation marks and citation omitted)).

Likewise, here, nearly every paragraph of Plaintiff's Complaint is replete with representations regarding Purdue's misconduct that form the factual predicate for its claims against McKinsey (as well as Plaintiff's proof of claim against Purdue). Plaintiff alleges that McKinsey helped Purdue achieve its goal of increasing sales of OxyContin following Purdue's 2007 guilty plea relating to the misbranding of OxyContin. *See* Complaint ¶¶ 9–19. Purdue purportedly engaged McKinsey to recommend several sales and marketing strategies, which Purdue thereafter supposedly relied on, adopted and implemented. *See id*. ¶¶ 121–24. In doing so, McKinsey allegedly helped Purdue triple its OxyContin sales. *See id.* ¶¶ 145–53. Plaintiff's Complaint culminates in allegations that McKinsey and Purdue conspired to sell and market opioids. *See id.* ¶¶ 218–27. Plaintiff cannot succeed on its tort claims and conspiracy theories against McKinsey without also establishing, at a minimum, that Purdue is at fault. This Action indisputably implicates Purdue's conduct as a joint tortfeasor and co-conspirator and, accordingly, "related-to" bankruptcy jurisdiction exists over Plaintiff's claims against McKinsey. *See In re Dow Corning Corp.*, 86 F.3d at 492.

In similar circumstances, the court in *Dunaway v. Purdue Pharm. L.P. (In re Purdue Pharm. L.P.)*, considered whether it had subject matter jurisdiction over a government enforcement action brought by Tennessee state officials against non-debtor "Related Parties" before enjoining the actions. 619 B.R. 38, 42 (S.D.N.Y. 2020). The court held that:

> [W]hen one tortfeasor files for bankruptcy, any action against their co-tortfeasors for the same conduct falls within the bankruptcy court's 'related-to' jurisdiction, since a finding of joint and several liability against the whole group could impact the *res* of the insolvent party's estate. That is because a trial on the harms alleged to have been caused in whole or in part by the debtor is 'related to' the bankruptcy, whether or not they are named as a defendant, because a judgment implicating the debtor's conduct could conceivably alter the debtor's rights, liability, options, or freedom of action. Therefore, 'related to' jurisdiction may extend

10

> to litigation against third party non-debtors because a plaintiff
> suing non-debtor whose joint tortfeasor has filed for bankruptcy
> can only proceed on its claims if it establishes that the debtor's
> misconduct occurred.

*Id.* at 50 (internal quotation marks and citations omitted). The court's conclusion is equally applicable here because a finding that McKinsey is liable is "likely to raise the issue of [Purdue's] liability, even if only indirectly." *Id.* Moreover, the "conceivable effects" standard is even more pronounced here, where McKinsey and Purdue allegedly conspired to increase Purdue's OxyContin sales. *See* Complaint ¶¶ 218–27. As in *In re Purdue Pharm. L.P.,* "there is no way for [Plaintiff] to pursue the allegations against [McKinsey] without implicating Purdue, and vice versa." *Id.* at 51.[5]

Accordingly, contrary to Plaintiff's suggestion (Motion at 25), Purdue, as McKinsey's alleged co-conspirator, could be collaterally estopped at a later date from relitigating any factual findings in this Action with respect to its liability. *In re Purdue Pharm. L.P.,* 619 B.R. at 45. Similarly, it is inconceivable that Purdue would not need to be "involved in discovery and related matters, which would impose costs on the Debtors estate." *Id.* Again, contrary to Plaintiff's unsupported statement that "this concern does not exist in the present case," *see* Motion at 25, just like in *In re Purdue Pharm. L.P.*, here the interconnected nature of Plaintiff's claims and Purdue's conduct will require Purdue's (or its bankruptcy successor's) participation in discovery and related matters. Discovery will impose substantial burden and costs on Purdue's bankruptcy

---

[5] It is of no moment that the "Related Party" in *In re Purdue Pharm. L.P.* was Purdue's former President and co-chairman because the determinative factor in that case, as here, was the closely intertwined allegations against both Purdue and the non-debtor party. *Id.,* 619 B.R. at 54 (noting that trying case against Purdue's alleged coconspirators would "entail proving facts that would also prove Purdue's own liability.") In any event, contrary to Plaintiff's contention (Motion at 25, n.1), McKinsey, as a "consultant", would be included as a Related Party to Purdue in Purdue's proposed plan of reorganization. *See* Bernard Decl., Ex. 3 at § 1.1.

estates. Additionally, this Action may provide setoff rights for McKinsey in any potential future claim against it by Purdue. *See Meritage Homes Corp. v. JPMorgan Chase Bank, N.A.*, 474 B.R. 526, 563 (Bankr. S.D. Ohio 2012) ("Because the outcome of the State Court Action could result in . . . setoff [rights] that in turn might reduce the value of property of the Estate . . . the [Action] could conceivably have an effect on the Estate."). These effects on Purdue's bankruptcy estates further establish that this Action is "related to" Purdue's Bankruptcy Case. *Id.*

Finally, that McKinsey has not asserted a proof of claim in the Purdue Bankruptcy Case is not dispositive. The closely intertwined claims asserted by Plaintiff against Purdue's estate, and McKinsey in this Action, as well as McKinsey's right to setoff any potential future claim by Purdue, ***alone*** demonstrate the conceivable effect that this Action has upon the Bankruptcy Case. *See California Pub. Employees' Ret. Sys. v. Wachovia Cap. Markets, LLC,* No. CV083491GPSPLAX, 2008 WL 11381419, at *2 (C.D. Cal. Oct. 5, 2008) (holding that state action against nondebtor might conceivably affect bankruptcy estate *solely because* (i) many of the plaintiffs asserted claims in debtor's bankruptcy estate for same losses sought in state court action and (ii) there were strong interconnections between state court action and debtor's bankruptcy case); *In re Thelen LLP*, No. 09-15631 (MEW), 2015 WL 4999972, at *7 (Bankr. S.D.N.Y. Aug. 21, 2015) (holding that the prevailing view is that "a proof of claim is not required in order to assert setoff as a defense to a claim made by the estate"). The mere fact that Purdue may owe indemnification or contribution to McKinsey arising from the claims here (or that setoff may exist) is yet an ***additional*** factor supporting "related-to" jurisdiction. Indeed, as the court in *In re Purdue Pharm. L.P.* explained, if "the record raises at least the possibility that further litigation against [Dr. Sackler] in [this action] could lead to a court fight over the scope of the [indemnification contract]. . . . The mere fact that such a dispute is conceivable is enough to

confer jurisdiction on the bankruptcy court." *See* 619 B.R. at 54–55. The same is true here where McKinsey properly has alleged potential indemnification and contribution rights against Purdue. ECF Doc. #1 at 20. Even the possibility of litigation over Purdue's indemnification or contribution obligations to McKinsey is sufficient to establish "related-to" bankruptcy jurisdiction. *See* 619 B.R. at 54–55; *see also In re W.R. Grace & Co.*, 386 B.R. 17, 28-29 & n.45 (Bankr. D. Del. 2008) ("related-to" jurisdiction even where "[d]ebtors do not acknowledge liability to [non-debtors] under any of these circumstances").

**B.     McKinsey Properly Removed This Action Under Section 1452(a)**

Plaintiff argues that, even if there were "related-to" jurisdiction over this Action, the police or regulatory power exception in section 1452(a) precludes removal. "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts . . . meant to ***enlarge***, not rein in, federal trial court removal/remand authority for claims related to bankruptcy cases." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 131-32 (1995) (Ginsburg, J. concurring) (emphasis added). Applying this exception here would run afoul of this principle, and it is not appropriate for two reasons. First, Plaintiff has failed to establish any authority to exercise police or regulatory powers pertaining to the specific claims here. Second, the claims asserted here seek monetary damages and accordingly fall outside the police power exception.

i.     Plaintiff's Claims Are Not an Authorized Exercise of any Police or Regulatory Power

Although Plaintiff relies on the pecuniary interest and public policy tests, which courts often utilize to determine whether the police or regulatory power exception applies, neither test is applicable because Plaintiff does not in fact possess the police or regulatory powers it purports to be enforcing. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 522 F. Supp. 2d 569, 575 (S.D.N.Y. 2007); *accord In re Westlake Property Holdings, LLC*, 606 B.R. 772, 781

(Bankr. N.D. Ill. 2019) (Village of Melrose Park "while holding certain police and regulatory powers, does not hold regulatory power over hospitals in Illinois").

Here, Plaintiff cannot establish that it has the authority to exercise police or regulatory power in bringing these claims. "In Illinois, municipalities that are not home-rule units have limited powers." *Vill. of Rockton, Illinois v. Sonoco Prod. Co.*, 135 F. Supp. 3d 700, 707 (N.D. Ill. 2015) (internal citations and quotation marks omitted). St. Clair County is not a home-rule unit[6] and, accordingly, only possesses "those powers that are ***specifically conveyed*** by the Constitution or by statute." *Englum v. City of Charleston*, 2017 IL App (4th) 160747, ¶ 59, 80 N.E.3d 61, 69 (internal citations omitted). Neither the Illinois Constitution nor any statute grants St. Clair County the police or regulatory power to enforce the purported claims here, nor does Plaintiff make any attempt to identify the source of any such authorization. *See* Ill. Const. art. VII, § 7; *see also Queenwood E. Sheltered Care Home, Ltd. v. Vill. of Morton*, 94 Ill. App. 3d 51, 54 (1981) (finding that in regard to a non-home rule unit "statutes granting powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it"). Thus, this Action is not brought under any police or regulatory power that Plaintiff possesses.

ii.    The Police or Regulatory Power Exception Does Not Apply to Claims Seeking Liquidation of Significant Monetary Damages

Even assuming that Plaintiff has the authority to enforce by this Action a police or regulatory power, that is not what Plaintiff is seeking to do here. Rather, Plaintiff seeks significant damages from McKinsey and its claims, accordingly, do not fall within the police or

---

[6] "Cook County is the *only* home rule county of the 102 Illinois counties." *Maria Alencastro, Claimant, v. the State of Illinois, Respondent.*, 54 Ill. Ct. Cl. 457, 464 (2001).

regulatory power exception under 28 U.S.C. § 1452(a).[7]  A lawsuit that seeks to liquidate a

plaintiff's own monetary claim does not fall within the police or regulatory power exception.

*Matter of Cash Currency Exch., Inc.*, 762 F.2d 542, 555 (7th Cir. 1985).  *See In re W.R. Grace &*

*Co.*, 384 B.R. at 682 (finding the action a violation of the stay when the "purpose of the [ ] action

is solely to liquidate its monetary claim for penalties"); *Chao v. Hosp. Staffing Servs., Inc.*, 270

F.3d 374, 391 (6th Cir. 2001) (finding that a lawsuit "seek[ing] . . . liquidated damages" is not

subject to the police or regulatory power exception).

Accordingly, this Action is not an exercise of a governmental unit's police or regulatory

power and is thus not exempt from removal under 28 U.S.C. § 1452(a).

**C.    Nor Should This Court Abstain From Exercising Its "Related-To" Bankruptcy Jurisdiction Over This Action**

In a final effort to avoid being part of coordinated litigation against McKinsey in federal

court, Plaintiff argues that, even if this Court has "related-to" jurisdiction over this Action, it

should abstain from exercising that jurisdiction or remand this Action for equitable reasons.

Plaintiff invokes both the mandatory and permissive abstention and equitable remand provisions

in 28 U.S.C. §§ 1334(c)(1)-(2), 1452(b).

As an initial matter, Plaintiff is wrong to say that its claims are subject to any form of

abstention because the Bankruptcy Code expressly requires them to be heard in federal court.

Plaintiff asserts that "Section 157(b)(2)(O) specifically excepts personal injury claims from core

proceedings" (core proceedings would not be subject to abstention).  *See* Motion at 28.  To

further establish that its claims are non-core and therefore subject to abstention, Plaintiff then

_____

[7] Although Plaintiff does not give a precise damages figure in the Complaint, it seeks over two billion dollars in damages in Purdue's bankruptcy cases for the allegedly overlapping conduct resulting in similar harm.  *See* Bernard Decl., Ex. 2.

explains that "numerous courts have held that personal injury claims underlying a state cause of action are not core issues under § 157." *Id.* (citing cases). But Plaintiff entirely overlooks that, to the extent it purports to bring such non-core personal injury claims, the district court may ***not*** abstain from exercising jurisdiction over them. 28 U.S.C. § 157(b)(5) ("The district court ***shall*** order that ***personal injury tort*** and wrongful death claims ***shall*** be tried in the ***district court*** in which the bankruptcy case is pending, or in the ***district court*** in the district in which the claim arose, as determined by the ***district court*** in which the bankruptcy case is pending") (emphasis added).[8] So abstention and equitable remand are inapplicable for that reason alone.

i.  Plaintiff Fails to Establish That Mandatory Abstention Is Required.

In any event, even if Plaintiff could invoke the mandatory abstention provision in 28 U.S.C. §§ 1334(c)(2), Plaintiff fails to satisfy its burden to demonstrate why this Court must abstain from exercising its "related-to" jurisdiction. There is no dispute that, to prevail on a motion for mandatory abstention, Plaintiff must show that: (1) the motion for abstention was timely; (2) that the action is based on a state law claim; (3) the action is "related to," but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) 28 U.S.C. § 1334 is the sole basis for federal jurisdiction; (5) an action is commenced in a state court; and (6) that the action can be "timely adjudicated" in state court. *See Prime Dev., Inc. v. First Clover Leaf Bank,* No. 10-445-DRH, 2010 WL 4919608, at *2 (S.D. Ill. Nov. 29, 2010) ("The burden of proving that abstention is appropriate is on the party seeking abstention"); *In re DeMert & Dougherty, Inc.*, No. 01CV7289, 2001 WL 1539063, at *7 (N.D. Ill. Nov. 30, 2001) (same). Here, only the

---

[8] For this reason, too, the appropriate court to consider this Motion is the District Court in the Southern District of New York. *See, e.g., Whittingham v. CLC of Laurel, LLC*, No. 2:06cvl 1-KS-MTP, 2006 WL 2423 l 04, at *1 (S.D. Miss. Aug. 22, 2006) ("Plaintiff has filed a [remand and abstention motion]. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue.").

fourth and sixth factors are in dispute. As to the fourth factor, as discussed below, mandatory abstention does not apply because section 1334 is not the sole basis for federal jurisdiction over this action; diversity jurisdiction also exists. *See infra*, Point II.

Even were the Court to conclude that there is no diversity jurisdiction, Plaintiff fails to show that this Action can be "timely adjudicated" in state court. Plaintiff lists factors that the court should consider when determining if a matter can be "timely adjudicated," but it does not provide any basis whatsoever for this Court to conclude that those factors have been satisfied. *See* Motion at 29. The blanket assertion that the action can be timely adjudicated in state court, without more, is insufficient for Plaintiff to meet its burden of showing that the Action can be timely adjudicated. *See Janazzo, Sr. v. Fleetboston Fin. Corp.*, No. 01 C 6939, 2002 WL 54541, at *4 (N.D. Ill. Jan. 15, 2002) ("It is well established that, under 28 U.S.C. § 1334(c)(2), plaintiff has the burden of proving that this action can be timely adjudicated in state court. Plaintiff may not meet his burden merely by *arguing* that a proceeding can be timely adjudicated in state court."); *In re Georgou*, 157 B.R. 847, 850-51 (N.D. Ill. 1993) (same).

Moreover, this matter cannot be timely adjudicated in state court. As the court held in *In re WorldCom Sec. Lit.*, 293 B.R. 308, 331 (S.D.N.Y. 2003):

> The size of the WorldCom bankruptcy, the close connections between the defendants in this action and the debtor, and the complexity of this litigation suggest the contrary [that the action would not be timely adjudicated in state court]; remanding to state court could slow the pace of litigation dramatically. If each of the actions removed from state court were remanded, it would lead to duplicative motion practice and repetitious discovery, as well as requiring common issues to be resolved separately by courts across the country. [Plaintiff] has not shown that its case could be both fairly and timely adjudicated by a state court in such circumstances.

*Id.; see also In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2005 WL 1404796, at *2 (finding that action could not be timely adjudicated in state court where defendants were "all

very deeply involved" in cases being handled by MDL, "which in turn have major implications for the Adelphia bankruptcy proceedings"). That is equally applicable here.

ii.     Neither Permissive Abstention or Equitable Remand is Warranted.

Similarly, neither permissive abstention nor equitable remand (under 28 U.S.C. §§ 1334(c)(1) or 1452(b)) are warranted because that would only perpetuate the inefficiencies and inconsistencies that McKinsey's 1407 Motion seeks to avoid. Here, the flood of opioid claims against Purdue were a factor in the filing of its Chapter 11 case. As explained above, resolution of Plaintiff's overlapping claims against McKinsey will conceivably impact the Purdue bankruptcy estates, including the overall theory, timing, and implementation of the Proposed Plan. McKinsey removed this Action and sought transfer to the Southern District of New York in pursuit of a centralized venue for adjudication of common issues that will result in equitable and uniform outcomes for Purdue's creditors, including Plaintiff, here, and for McKinsey.

Thus, the situation here is akin to that in *WorldCom*, 293 B.R. at 308, in which an MDL was established to handle securities law claims alongside a pending bankruptcy case. The court there declined to abstain, finding that "[i]t is beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists" so that the cases could proceed before the MDL court. 293 B.R. at 333. That is because "[w]ith the consolidation of the litigation in one court, the motion practice and discovery process can be managed to protect the rights of all parties and to preserve, to the extent possible, the maximum amount of recovery by plaintiffs with meritorious claims." *Id.* Just like in *WorldCom*, here, if this Court were to abstain and remand this action, "motion practice and discovery would proceed separately in many jurisdictions. The litigation that would ensue in various fora would be entirely duplicative and wasteful. It would eat into the funds available to pay the alleged victims identified in this litigation." *Id.* at 333–34; *see also In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F.

Supp. 2d 861, 883 (S.D. Ohio 2004) (remanding cases removed on basis of bankruptcy jurisdiction "would disrupt the orderly administration of the National Century MDL."); *Connecticut Resources Recovery Auth. v. Lay,* 292 B.R. 464 (D. Conn.2003) (declining to abstain because of "the size and complexity of the litigation, and the judicial inefficiency of litigating common issues in courts across the country"); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. CIV.A. G-02-0299, 2002 WL 32107216, at * 10 (S.D. Tex. Aug. 12, 2002) (finding discretionary abstention unwarranted because of "nature and size of the consolidated [MDL] proceedings" and "the necessity for efficient administration in a single court").

It is well settled that federal courts must be sparing in the exercise of discretionary abstention because they possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (observing that federal courts may abstain only for a few "extraordinary and narrow exception[s]"); *see also Fid. & Deposit Co. of Maryland v. TRG Venture Two, LLC,* No. 19 C 389, 2019 WL 5208853, at *2 (N.D. Ill. Oct. 16, 2019) ("[F]ederal courts generally should exercise their jurisdiction if properly conferred and . . . abstention is the exception rather than the rule.").

In sum, Plaintiff has not carried its burden to make such an exception here. Principles of judicial economy, efficiency, and consistency strongly support the exercise of jurisdiction so that this Action, and the others against McKinsey, may proceed in an MDL. Abstention or remand would frustrate this equitable result.

## II.      This Court Also Has Diversity Jurisdiction Over This Action

An additional and independent basis to deny Plaintiff's Motion is that the Court has diversity jurisdiction over this Action, notwithstanding Plaintiff's efforts to defeat diversity and

avoid MDL proceedings by joining unrelated claims against the Physician Defendant.[9]  Because

Plaintiff's claims against the Physician Defendant are fatally deficient, the Court can sever those

claims pursuant to the doctrine of fraudulent joinder.  The Court can also sever the claims against

the Physician Defendant from this Action because she is a dispensable party.  Moreover, the

Court can ignore the Physician Defendant's citizenship under the doctrine of fraudulent

misjoinder.  Finally, Plaintiff has failed to establish that Physician Defendant is a citizen of

Illinois, and at a minimum, McKinsey is entitled to an evidentiary hearing in the event the Court

determines it necessary to evaluate diversity as an independent basis for jurisdiction.

**A.      Physician Defendant is Fraudulently Joined and Should Be Severed**

Courts consider joinder "fraudulent" when plaintiffs "join an in-state defendant solely for

the purposes of defeating federal jurisdiction."  *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174

F.3d 875, 878 (7th Cir. 1999).  If the court determines "no reasonable possibility [exists] that a

state court would rule against the [in-state] defendant," then the non-diverse defendant must be

severed.  *Id.*  Here, Plaintiff's claims are fatally deficient and constitute fraudulent joinder for

two reasons: first, Plaintiff failed the pleadings requirements required by Illinois' medical

malpractice law; and second, Plaintiff's claims are time barred.

i.      Plaintiff's Malpractice Claims Fail Because Plaintiff Fails to Comply With the
        Mandatory Requirements of the Illinois Medical Malpractice Statute.

Plaintiff's claims against Physician Defendant fail as a matter of law.  Plaintiff identified

no patients harmed by Physician Defendant's alleged overprescribing, attached no affidavit from

a medical professional discussing the impropriety of Physician Defendant's actions, and never

---

[9] Plaintiff's abstention and equitable remand arguments cannot be used to disregard this Court's
diversity jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988) ("The
court had diversity jurisdiction over the case, which is not discretionary. Thus, the [court] could
not properly have eliminated the case from its docket, whether by a remand or by a dismissal").

submitted a written report. Illinois' medical malpractice law requires plaintiffs to "file an affidavit, attached to the original and all copies of the complaint" containing:

> That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action.

735 ILCS 5/2-622(a).

In addition, the law requires "a separate certificate and written report shall be filed as to each defendant who has been named in the complaint and shall be filed as to each defendant named at a later time." *Id.* Although this requirement is included with in the Illinois Code of Civil Procedure, it is considered substantive for *Erie* purposes, and federal courts routinely enforce the requirement. *See, e.g.*, *Salsman v. United States*, No. 03-CV-0140-MJR, 2005 U.S. Dist. LEXIS 18072 (S.D. Ill. Aug. 19, 2005); *Chapman v. Chandra*, Case No. 0 6-cv-0651-MJR, 2007 U.S. Dist. LEXIS 40739, at *6-7 (S.D. Ill. June 5, 2007) (collecting cases).

The Illinois Code of Civil Procedure mandates these requirements for "any action, whether in tort, contract, or otherwise in which the plaintiff seeks damages for injuries or death caused by reason of medical [malpractice]." *Id.* Here, Plaintiff alleges "Physician Defendant, given her training and licensure, knew or should have known that her actions prescribing were medically inappropriate." Complaint ¶ 231. Decisions of treatment, including the consideration of whether to administer controlled prescription drugs, requires heightened medical training and

implicates medical decision making.  As a result, the four torts brought against Physician

Defendant based on her treatment decisions – public nuisance, negligent undertaking, civil aiding

and abetting, and conspiracy to violate the Illinois Consumer Fraud Act – are claims seeking

damages for injuries "by reason of" medical malpractice and must follow the requisite

requirements.  *See Bommersbach v. Ruiz*, 461 F. Supp. 2d 743, 754 (S.D. Ill. 2006); *McDonald v.

Obaisi*, No. 16 C 5417, 2018 U.S. Dist. LEXIS 34897, at *4 (N.D. Ill. Mar. 2, 2018); *see also

AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2017 U.S. Dist. LEXIS 124462 at *2 ("It can

hardly be questioned that writing prescriptions for controlled medication are acts done within the

context of rendering health care services.").

Failure to comply "***shall*** be grounds for dismissal."  735 ILCS 5/2-622 (emphasis added);

*see Hill v. C.R. Bard, Inc.*, 582 F. Supp. 2d 1041 (C.D. Ill. 2008) (dismissing physician

defendant after plaintiff failed to attach requisite certificate to medical malpractice claim, and

denying plaintiff's remand motion on fraudulent joinder grounds); *see also AmerisourceBergen

Drug Corp.*, No. 3:17-01362, 2017 U.S. Dist. LEXIS 124462 at *2 (taking identical actions in

opioid case implicating similar West Virginia medical malpractice law).  Accordingly, no

recovery is possible against Physician Defendant and she is thus fraudulently joined.

ii.     Plaintiff's Claims Also Fail Because They are Time-Barred.

Independently, *even if* Plaintiff had properly brought a claim (and it did not), Physician

Defendant is fraudulently joined because the claims against her are time-barred.  Under Illinois

law, an action against a physician "arising out of patient care" must be brought within two years

after the plaintiff knew or should have known of the injury for which damages are sought.  735

ILCS 5/13-212(a). And "in no event shall such action be brought more than 4 years after the date

on which occurred the act or omission or occurrence alleged in such action to have been the

cause of such injury or death."  *Id.*  Otherwise, the claims fall under the 5 year catch-all statute of

limitations.  735 ILCS 5/13-205.  As Plaintiff admits, because Illinois employs the discovery rule in medical malpractice actions, once a person knows or should know of their injury, "the burden is upon the injured person to inquire further as to the existence of the cause of action."  *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1021 (2007).

The claims are barred, regardless of which statutory period the Court utilizes.  Under a straightforward application of the discovery rule, Plaintiff knew or should have known about opioid over prescriptions for over a decade prior to the filing of this lawsuit.  In ***2001***, Plaintiff claims its injuries from opioid overprescribing began.  *See* Bernard Decl., Ex. 2.  In ***2014***, Plaintiff knew its opioid prescriptions were well above the national average.  Complaint ¶ 208. In ***2015***, a newspaper in St. Clair County reported on efforts to create a statewide opioid prescription database based on physician prescription rates and reported on rising deaths based on the over-prescription of opioids.  *See* Bernard Decl., Ex. 9.  That same year, the county coroner of Madison County described the rapid rate of opioid prescriptions and its damaging effects on the county – and said the issues dated back to ***2009***.  *See id*., Ex. 10.  The actual date of Physician Defendant's censure by the Illinois regulatory board, as alleged by Plaintiff, is irrelevant.  Plaintiff bore the burden to "inquire further" into the prescription practices of its county doctors, especially for those in Physician Defendant's field of pain management. Physician Defendant even received a license to prescribe scheduled substances in 2015.  *See id*., Ex. 8.  The information was there, had Plaintiff looked.

In addition, the doctrine of continuing tortious conduct is inapplicable here.  As the party asserting a continuing tort, Plaintiff bears the burden of proving an unbroken, continuous chain of tortious events linked to an event ***within the limitations period***.  *See Cunningham v. Huffman*, 154 Ill. 2d 398, 609 N.E.2d 321 (1993) ("To prevail under this [theory], a plaintiff must

demonstrate: (1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong.").  Plaintiff's Complaint is silent as to the rate of Physician Defendant's over-prescription, whom she over-prescribed to, how much she over-prescribed, how many times she over-prescribed, and what the last date of her prescription was.  Even Physician Defendant's 2020 probation, which forms the crux of Plaintiff's argument that the statute of limitations does not apply, is silent as to when Physician Defendant conducted her alleged bad acts, or whether she even over-prescribed opioids at all.  It merely says she was "placed on indefinite probation for a minimum of two years . . . due to inappropriately prescribing controlled substances." *See* Bernard Decl., Ex. 6.  There is no allegation (and no evidence) that Physician Defendant prescribed any medication within the County within the two-year limitations period.  Without specific pleading and proof of facts in support of the continuing conduct theory, the statute of limitations must be applied.

**B.**     **The Physician Defendant is a Dispensable Party Whose Actions are Unrelated To McKinsey and Should be Severed under Rule 21**

Contrary to the plain text of Federal Rule of Civil Procedure 21 ("Rule 21"), which permits courts to sever claims and claimants that are not "indispensable" parties under Rule 19 or whose claims do not arise from the same "series of transactions" under Rule 20, Plaintiff asserts severance is a "a novel theory," tantamount to "gamesmanship," that would create an "upheaval of longstanding procedure."  Motion at 4.  Plaintiff's assertions conflict with well settled law in the Seventh Circuit.  "Both district courts and appellate courts have the authority to dismiss a nondiverse party to retain diversity jurisdiction." *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1492 (7th Cir. 1996).  "Rule 21 allows [courts] to drop a nondiverse dispensable party to secure subject matter jurisdiction in the remaining action" and to "correct [a] jurisdictional

defect." *Alexander v. Abbott Labs., Inc. (In re Depakote)*, No. 12-CV-52-NJR-SCW, 2016 U.S. Dist. LEXIS 154451, at *7 (S.D. Ill. Nov. 4, 2016).

Physician Defendant should be severed via Rule 21 because she is not an indispensable party under Rule 19.  Plaintiff's sole justification for joining Physician Defendant rests on its specious allegations that McKinsey and Physician Defendant are "joint tortfeasors" who were "necessary components to opioid sales."  Motion at 4.  But joint tortfeasors have long been considered dispensable parties under Rule 19.  *See Temple v. Synthes Corp.*, 498 U.S. 5, 7-8 (1990); *see also Pace v. Timmermann's Ranch & Saddle Shop, Inc.,* 795 F.3d 748, 756 (7th Cir. 2015); *Florian v. Sequa Corp.,* No. 98 C 7459, 2002 U.S. Dist. LEXIS 24149, at *18 (N.D. Ill. Dec. 16, 2002) (citing Rule 19 and explaining joint tortfeasors are merely permissive parties).

*Todd v. Merrell Dow Pharm., Inc.*, 942 F.2d 1173 (7th Cir. 1991), is instructive on Rule 19 dispensability.  In *Todd*, the plaintiff declined her statutory right to join a physician in a state lawsuit against a drug manufacturer whose drugs the doctor misused.  After removal, plaintiff attempted to dismiss the case, arguing the doctor was an indispensable party under Rule 19.  The court declined, holding the doctor represented a dispensable "joint tortfeasor lacking any personal interest in [the] suit."  *Id.* at 1176-78.  Plaintiff correctly notes *Todd* did not involve severing a party, but this was not its purpose.  Rather, *Todd* demonstrates the cavern between McKinsey's actions and Physician Defendant's.  If a doctor who misused a manufacturer's drugs is a dispensable party in a suit against that manufacturer, then Physician Defendant is dispensable in a more remote case about McKinsey's liability for its consultant services.

In addition, Physician Defendant's misjoinder under Rule 20 requires Rule 21 severance because her medical decision-making did not arise out of the same transaction as McKinsey's consulting work.  Preliminarily, Plaintiff's complaint cannot demonstrate a shared series of

transactions because its complaint does not even satisfy basic pleading standards. As Physician Defendant notes in her own Motion to Dismiss, Plaintiff's "allegations are vague and ambiguous" and "do not state a claim on which relief can be granted to plaintiffs." ECF Doc. # 19, at 1. Plaintiff relies solely on unsupported, conclusory allegations to construct a relationship between McKinsey and Physician Defendant: the complaint states that they "***acted in concert***," that they "***conspired***," that Physician Defendant provided "***substantial assistance***" to McKinsey, even that Physician Defendant worked with McKinsey "for ***decades*** … to commit numerous unlawful acts." Complaint ¶¶ 209, 291, 222, 234 (emphasis added). However, in support of such allegations, Plaintiff's 64 page, 241 paragraph Complaint alleges only one remote and unsubstantiated connection between Physician Defendant and McKinsey: that she "exemplifie[d] the type of prescribers McKinsey urged Purdue to target." *Id.* ¶ 99. Plaintiff's complaint lacks any allegations McKinsey ever contacted Physician Defendant. There are no allegations Purdue or McKinsey actually targeted Physician Defendant. And there are no allegations that a Purdue representative ever visited her. On this issue,

Plaintiff's Motion is even more nebulous and states sparingly that McKinsey's "sales strategy" provided to Purdue "influenced" Physician Defendant. Motion at 3. Plaintiff cites nothing to support its belief that unspecified allegations of "influence" resulted in medical decision making.[10]

Most importantly, the factual, conceptual, and logistical practice of medicine involves consideration of factors entirely distinct from management consulting. Guidelines from the

---

[10] Its only argument in support of that proposition is a wholly irrelevant example where one defendant advises another defendant to enter a dangerous intersection. Motion at 4. But McKinsey never advised Physician Defendant to do anything. Prior to this lawsuit, they had never communicated. Physician Defendant had never even heard of McKinsey. In Plaintiff's hypothetical, McKinsey isn't actually present.

Center for Disease Control to physicians prescribing opioids established a consortium of factors to determine the propriety of opioid prescriptions: the patient's age, mental health, medical history, and pain acuity, among others.[11] McKinsey, as a management consultant company, creates statistical models evaluating aggregated data and the outcomes of varied courses of actions for clients based on their objectives. No overlap exists in the factors considered in *prescribing* opioids and the factors considered in data presentations *about* opioids.

Plaintiff's position here, taken to its logical conclusion, represents an unjustifiably expansive view of joinder. To Plaintiff, *any* link "in the same chain of events" justifies joinder, no matter how tenuous the links are, and neither defendants nor courts hold any recourse to amend it. Motion at 4. Courts across the country have broadly rejected this approach. *See, e.g.*, *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (severing a non-diverse party under Rule 21 where court determined claims based on products liability against the removing defendants were separate from malpractice claims of doctor who implanted the product).[12]

Finally, Rule 21 severance prejudices neither side and enables the most efficient outcome for both parties. Severance will permit the centralized adjudication in an MDL of the common claims shared by all plaintiffs countrywide against McKinsey, and Plaintiff can still pursue any distinct medical malpractice claims it may have against the Physician Defendant in state court. On the other hand, remand prejudices McKinsey and harms judicial efficiency by forcing

---

[11] *See* Dowell, Deborah et al.*, CDC Guideline for Prescribing Opioids for Chronic Pain — United States, 2016,* CENTER FOR DISEASE CONTROL (March 18, 2016), https://www.cdc.gov/mmwr/volumes/65/rr/rr6501e1.htm#suggestedcitation

[12] *See also Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 706-07 (D. Md. 2015) (same); *Joseph v. Baxter International, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009) (same); *Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 U.S. Dist. LEXIS 107996, at *10 (E.D. Va. Oct. 8, 2010) (same); *Hughes v. Sears, Roebuck & Co.*, Civil Action No. 2:09-CV-93, 2009 U.S. Dist. LEXIS 82550, at *16 (N.D.W. Va. Sep. 3, 2009) (same).

multiple litigations on identical issues in different courts, and risks uneven, inapposite outcomes. *See Sutton*, 251 F.R.D. at 505 ("Plaintiff's claims against the [non-diverse] Defendants are severed and remanded pursuant to Rule 21 . . . so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *Baxter International, Inc.*, 614 F. Supp. 2d 868 at 873 ("[Plaintiffs] retain an adequate remedy against the [non-diverse defendants] as they can proceed with their claims in state court … [and] the plaintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery.").

## C. Fraudulent Misjoinder Allows this Court to Sever Physician Defendant to Protect McKinsey's Right to Removal

Fraudulent misjoinder provides this Court an additional vehicle to protect McKinsey's statutory right to remove cases to federal court by permitting removal where joinder of the non-diverse plaintiff is "egregious." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 853 (S.D. Ill. 2011). However, determining egregiousness does not require finding Plaintiff committed a "fraud on the court," nor any finding that there is no reasonable possibility of recovery, as required in fraudulent joinder. *Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004). Rather, fraudulent misjoinder merely requires a showing that plaintiff has "asserted colorable claims against the nondiverse defendant, [but] those claims have no 'real connection'" to the claims asserted against the diverse defendants. *In re Yasmin & Yaz (Drospirenone) Mktg.*, 779 F. Supp. 2d 846 at 853. Courts use fraudulent misjoinder to cure instances where a defendant's "statutory right to removal has been frustrated by [a] [p]laintiff['s] improper joinder." *Wyeth*, 344 F. Supp. 2d 674 at 685. Specifically when assessing remand motions, where "a non-diverse party … cannot be properly

joined under the Federal Rules of Civil Procedures," courts utilize fraudulent misjoinder to protect a defendant's "statutory right of removal … over [protecting] a plaintiff's choice of forum." *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. CIV 07-1487 DWF/AJB, 2007 WL 2572048 (D. Minn. Aug. 30, 2007).

While the Seventh Circuit has yet to rule on the doctrine, other courts hearing opioid cases have used fraudulent misjoinder to sever non-diverse doctors and preserve diversity jurisdiction. *See Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 647 (S.D. W. Va. 2017) (finding relationship "between the actions of the corporate defendants, who allegedly flooded the market with opioids, and [the physician defendant], who prescribed some of them," to be "attenuated," and concluding "no common questions of law or fact in plaintiff's claims against the corporate defendants and the claims against [the physician defendant]."); *City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2017 WL 3317300, at *4-5 (S.D. W. Va. Aug. 3, 2017). Here, Physician Defendant was misjoined, as the practice of medicine is factually, logically and legally distinct from management consulting. As she cannot be properly joined under the Federal Rules of Civil Procedure, fairness requires severance.

**D.      There is a Genuine Dispute as to Physician Defendant's Citizenship**

To the extent a genuine factual dispute exists between the parties as to Physician Defendant's domicile for diversity purposes, McKinsey respectfully requests an evidentiary hearing to resolve the matter. "Domicile has two elements: (1) physical presence or residence in a state and (2) an intent to remain in the state." *Midwest Transit, Inc. v. Hicks*, 79 F. App'x 205, 208 (7th Cir. 2003). The Seventh Circuit has acknowledged the evolving complexity of this analysis as increasingly people are far more mobile than when this rule was created, with jobs and property in different states. *Id.*; *see also Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). As a result, "[i]n more complex cases, courts have tried to glean intent from the

following factors: current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Id.*

Here, the available evidence shows that Physician Defendant works in Missouri, has been sanctioned by the Missouri medical regulatory board, and submitted herself to their jurisdiction in order to continue working there. *See* Bernard Decl., Ex. 7. Plaintiff's evidence purporting to show Illinois citizenship does not pass evidentiary muster. Merely pleading an address satisfies nothing, as pleadings are not evidence. *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730 (7th Cir. 2002). And, the affidavit of service only proves the courier effectuated service at a location in Illinois, but nothing indicates the process server holds personal knowledge of whose property it was or who if anyone was domiciled there. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989) (personal knowledge can arise from inferences based on perceived facts, but "there are limits."). The process server prepared the affidavit merely to establish the fact of service, and nothing else. Plaintiff has failed to produce competent evidence in support of its domicile allegation, and without more that justifies an evidentiary hearing.

In this Circuit, evidentiary hearings have been recommended to resolve material issues of fact pertaining to domicile. *See Hicks*, 79 F. App'x at 209; *see also Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999) (finding abuse of discretion where district court judge based decision to dismiss action for lack of subject matter jurisdiction solely on affidavits, despite facially apparent credibility issues). For the foregoing reasons, McKinsey respectfully requests an evidentiary hearing to determine this threshold issue if necessary to resolve Plaintiff's Motion.

**III. This Court Should Hold Plaintiff's Motion in Abeyance Until the JPML Court Decides McKinsey's Section 1407 Transfer Motion**

As a matter of judicial efficiency and consistency, this Court should hold in abeyance Plaintiff's Motion while McKinsey's Section 1407 Motion, seeking pre-trial coordination of all actions filed against it, is decided by the JPML (at a hearing now set for May 27). That is precisely what the District Court in the Western District of Oklahoma recently did with a similar motion filed by co-counsel to Plaintiff here.[13] While we acknowledge the Court's earlier ruling denying McKinsey's motion to stay the proceedings in their entirety, ECF Doc. # 32, these new developments justify a stay with respect to this specific Motion. We respectfully submit that courts in this Circuit routinely stay remand motions, in particular, while an MDL transfer motion is pending "even where subject matter jurisdiction is uncertain." *Board of Trustees of Teachers' Retirement System of State of Illinois v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 902, 905 (N.D. Ill. 2002). Thus, while federal courts generally have an obligation to determine whether subject matter jurisdiction exists in every case, the specific circumstances here present a well-recognized exception to that rule. Instead, the Court need only undertake a "preliminary assessment" to determine whether it has subject matter jurisdiction over the claims by considering (i) whether the issues on remand are simple or sufficiently difficult to require meaningful judicial resources and (ii) "whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding." *See id.* at 902, 905. Both criteria favor staying Plaintiff's Motion pending the JPML's ruling.[14]

---

[13] *See* Bernard Decl., Ex. 5 (finding that "because there are three other motions to remand in other districts raising substantially similar issues, any prejudice resulting from the delay is outweighed by the benefits of centralized consideration of the issues raised in the motion to remand and the conservation of judicial resources.").

[14] Congress has also provided the relevant statutory authority to do so. "28 U.S.C. § 1407 authorizes the JPML to order a case transferred despite the pendency of a jurisdictional objection." *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1047 (E.D. Wisc. 2001); *see also Gen. Elec. Co. v. Byrne*, 611 F.2d 670, 672 (7th Cir. 1979) ("[I]f the Multidistrict Panel had

While this Court's jurisdiction is securely established, *see supra* Points I(A) and II, at a minimum, Plaintiff's Motion raises questions that require meaningful judicial resources to resolve. Moreover, the Motion includes ***procedural*** questions like the propriety of removal and abstention, which not only raise a host of detailed and fact-intensive considerations, but also presuppose that the court ***has subject matter jurisdiction***. *See MTBE Prod. Liab. Litig.*, 522 F. Supp. 2d at 567 ("There is no reason to hold that an improper removal under section 1452 affects a court's bankruptcy jurisdiction under section 1334."); *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002) ("abstention . . . presupposes jurisdiction").

In *Board of Trustees*, for example, Plaintiffs questioned the propriety of removal under 28 U.S.C. § 1452, challenged the court's "related-to" jurisdiction under 28 U.S.C. § 1334(b), and alternatively moved to abstain under 28 U.S.C. § 1334(c). 244 F. Supp. 2d at 903–05. Similarly, Plaintiff here challenges McKinsey's removal of the Action, this Court's "related-to" jurisdiction, and moves for abstention. Motion at 11–31. As in *Board of Trustees*, Plaintiff's Motion will require this Court to "untangl[e] at least one of the three legal snarls. . ." *Id.* at 905.[15] Accordingly, "[t]he question, then, is whether other courts are facing or likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding." *See id.* Here, as in *Board of Trustees*, "[p]lainly, the answer is yes." *Id.*

The Action is one of 28 filed against McKinsey in 16 different states or federal districts that make substantially similar allegations related to consulting work McKinsey performed for

---

transferred these cases prior to the entry of the remand order . . ., the transferee court would have had jurisdiction to consider the motion for remand after transfer").

[15] Aside from the arguments regarding the Court's bankruptcy jurisdiction, the Court would also have to resolve Plaintiff's arguments against diversity jurisdiction, *see supra*, Point II, which itself raises several, additional "legal snarls." *See Board of Trustees*, 244 F. Supp. 2d at 905.

Purdue.  McKinsey has so far removed four of those actions from state courts to federal court on the basis of "related-to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b).  McKinsey now faces four motions to remand which challenge McKinsey's assertion of "related-to" bankruptcy jurisdiction and alternatively move to abstain.[16]  Therefore, just like in *Board of Trustees*, here, "[j]udicial economy favors a stay," as "[h]aving one court rather than three decide complex jurisdictional issues obviously saves judicial resources," avoids the threat of inconsistent rulings, and would result in minimal, if any inconvenience to the Plaintiff.  244 F. Supp. 2d at 905-06; *see also, e.g.*, *Wagner v. Merck & Co., Inc.*, No. 05-CV-00364-DRH, 2005 WL 8173707, at *2 (S.D. Ill. June 21, 2005) (granting motion to stay all proceedings, including motion to remand, where "it is almost certain that the transferee court will hear and decide many of the same issues Plaintiffs ask this Court to tackle in ruling on their motion to remand," and noting that "while Plaintiffs might be subjected to some delay as a result of the issuance of a stay, that prejudice does not outweigh the judicial economy interests").[17]

---

[16] Plaintiff's Motion is merely a re-packaged version of another motion to remand filed by the same counsel in Oklahoma District Court, which has now been stayed pending the JPML's 1407 Motion.  *See* Bernard Decl., Ex. 4.  In fact, Plaintiff's counsel here confuses this Motion with the other now-stayed motion.  McKinsey did not cite (as Plaintiff suggests) to *In re Gardner*, 913 F.2d 1515 (10th Cir. 1990), in its notice of removal here, nor is the *In re Imerys Talc Am., Inc.* case, which Plaintiff relies on heavily, from this district (as Plaintiff also states).  *See* Motion at 23.  Plaintiff's mere cutting and pasting of the arguments and legal theories raised in its similar remand motions demonstrates the benefit of a stay, which will enable the parties to avoid having to litigate the same legal questions before multiple district courts.

[17] Regarding Plaintiff's motion to abstain (which, again, presupposes proper federal jurisdiction), deference to the transferee court is particularly appropriate because that court will be in a better position to evaluate whether abstention is warranted in light of the overall context of the McKinsey litigation in relation to the Purdue Bankruptcy Case.  *See Bd. of Trustees*, 244 F. Supp. 2d at 903-05 (declining to resolve abstention motion that was presented in multiple, overlapping cases, pending JPML transfer ruling).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be stayed pending resolution of

McKinsey's JPML transfer motion, or in the alternative, denied in its entirety.

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

*s/ Stephen J. Newman*
Stephen J. Newman
2029 Century Park East, 18th Floor
Los Angeles, CA 90067
Phone: (310) 556-5800
snewman@stroock.com

James Brodzik
Hinshaw & Culbertson LLP
521 Main Street, Suite 300
Belleville, IL. 62220
Phone:(618)310-2325
jbbrodzik@hinshawlaw.com

Daniel K. Ryan #6196616
dryan@hinshawlaw.com
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Attorneys for Defendant MCKINSEY &
COMPANY, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed and served electronically via the Court's ECF system on all parties receiving ECF notices, on this 16th day of April, 2021.

STROOCK & STROOCK & LAVAN LLP

s/ Stephen J. Newman
Stephen J. Newman
2029 Century Park East, 18th Floor
Los Angeles, CA 90067
Phone: (310) 556-5800
snewman@stroock.com

James Brodzik
Hinshaw & Culbertson LLP
521 Main Street, Suite 300
Belleville, IL. 62220
Phone:(618)310-2325
jbbrodzik@hinshawlaw.com

Daniel K. Ryan #6196616
dryan@hinshawlaw.com
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Attorneys for Defendant MCKINSEY &
COMPANY, INC.